UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RESIENTIAL FINANCE CORPORATION,

        Plaintiff,                            Case No. 2:13-cv-1145
                                                      JUDGE GREGORY L. FROST
        v.                                       Magistrate Judge Norah McCann King

DAVID LAWVER, et al.,

        Defendants.

**OPINION & ORDER**

This matter is before the Court for consideration of the following filings: Defendant Opes Advisors, Inc.'s ("Opes") motion to dismiss for lack of personal jurisdiction and improper venue (ECF No. 15), Plaintiff Residential Finance Corp.'s ("RFC") memorandum in opposition (ECF No. 24), and Opes' reply (ECF No. 26); and Defendant KAL Financial, Inc.'s ("KAL") motion to dismiss for lack of personal jurisdiction (ECF No. 30), RFC's memorandum in opposition (ECF No. 33), and KAL's reply (ECF No. 39). For the reasons that follow, the Court **GRANTS** the motions and dismisses Opes and KAL from this case.

    **I.**      **BACKGROUND**

RFC is an Ohio company whose business involves mortgage loans. RFC operates in multiple states; however, this lawsuit involves RFC's office in Campbell, California ("Campbell Branch").

In or about November 2012, Defendant David Lawver applied for a position as Producing Branch Manager of the Campbell Branch. RFC alleges that Lawver misrepresented his employment history at the time he applied for the position and, specifically, that Lawver

misrepresented the extent to which he was involved with KAL, another mortgage company operating a similar business as RFC.

On January 9, 2013, Lawver executed a Producing Branch Manager Agreement ("Agreement") setting forth his duties and obligations to RFC during his employment therewith. In the Agreement, Lawver promised, *inter alia*, to devote his full time and attention to RFC and no other employer, lender, broker, or other entity. RFC alleges that Lawver violated the Agreement by continuing to work for KAL throughout his employment with RFC.

Lawver formally commenced employment with RFC in February 2013. Shortly thereafter, RFC hired Defendants Robert McCarty and Robert Bachman to join Lawver in managing and supervising the Campbell Branch.

RFC alleges that McCarty and Bachman worked with Lawver (collectively, the "Individual Defendants") "to direct and supervise loan applications, loan closings, and other mortgage industry related business through entities other than [RFC]," and to "siphon business opportunities from [RFC] in order to further their own financial interests and to further the financial interests of other companies." (Compl. ¶¶ 36 & 38.)[1] More specifically, RFC alleges that the Individual Defendants "used RFC's resources and business opportunities to build business for other companies." (Compl. ¶ 48.) RFC names Opes, KAL, Defendant Silicon Valley Capital Funding, Inc. ("Silicon Valley"), and other unidentified entities as the "other companies" to whom the Individual Defendants diverted business opportunities.

In July 2013, the Campbell Branch saw its profits and income decline substantially. In August 2013, it began losing money. RFC closed the Campbell Branch on September 20, 2013 and, two days later, it terminated Lawver's employment.

---

[1] RFC alleges that the Individual Defendants took other unlawful actions, such as improperly handling the Campbell Branch's hiring and compensation policies, but those actions are not relevant to the motions to dismiss discussed herein.

2

On September 22, 2013, the same day Lawver was terminated from RFC's employ, Opes opened in the office space previously occupied by RFC's Campbell Branch.[2] The Individual Defendants allegedly began to direct RFC's customers to transfer their accounts to Opes, who allegedly "converted loan applications, files, and property belonging to [RFC]." (Compl. ¶ 67.)

In November 2013, RFC filed this lawsuit against the Individual Defendants, Opes, KAL, 101 Loan, LLC, Silicon Valley, and other unnamed entities. The crux of the complaint involves claims for breach of contract, fraud, and related claims against the Individual Defendants. Count Twelve, however, asserts a civil conspiracy claim against all Defendants. RFC alleges that Defendants "engaged in a civil conspiracy to defraud [RFC] and utilize[] its resources and assets to divert its mortgage loan customers to others," which "constitutes an agreement between each of Defendants to accomplish an unlawful and illegal objective[]" that caused RFC to suffer damages. (Compl. ¶¶ 202–03.) These allegations, in addition to the allegations summarized above, are the only allegations linking Opes and KAL to the alleged misconduct.

Opes and KAL moved to dismiss the claim against them for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). It is undisputed that both Opes and KAL are California companies that do not conduct business in Ohio. Neither Opes nor KAL has ever marketed and/or advertised in the State, and neither has entered into any agreements with RFC, save for a lease agreement between KAL and RFC involving office space in California that is not at issue in this litigation.

RFC does not dispute those facts. In support of its position, RFC asserts that jurisdiction is proper because Opes/KAL caused tortious injury to be felt in the State by conspiring to harm RFC which, as stated above, is an Ohio company. This dispute therefore hinges on whether

---

[2] RFC alleges that Opes "opened under the direction of Defendant Lawver" and that Lawver had been working for Opes since May 2013. (Compl. ¶ 65, 72.)

3

Opes and/or KAL are subject to jurisdiction in this Court for allegedly conspiring to harm an Ohio company.

## II. ANALYSIS

The standards governing a motion to dismiss under Rule 12(b)(2) are well settled. In general, the plaintiff bears the burden of establishing personal jurisdiction over the defendant. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). A court should begin its analysis by looking at the complaint, which "must have 'established with reasonable particularity' those specific facts that support jurisdiction." *Palnik v. Westlake Entm't*, 344 F. App'x 249, 251 (6th Cir. 2009) (quoting *Neogen Corp. v. Neo Gen Screening, Inc*., 282 F.3d 883, 887 (6th Cir. 2002)). Then, "in the face of a properly supported motion for dismissal, the plaintiff must not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen*, 935 F.2d at 1458. A court may hold an evidentiary hearing to resolve apparent factual questions raised in the briefs or it may decide the motion on the affidavits alone. *Id*. Absent an evidentiary hearing, a court must consider the pleadings and affidavits in the light most favorable to the plaintiff, and the plaintiff must make a prima facie showing of jurisdiction in order to defeat the 12(b)(2) motion. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

The facts surrounding Opes' and KAL's Rule 12(b)(2) motions are not in dispute. As such, the Court will decide the motions on the briefs and affidavits alone and must consider RFC's complaint in the light most favorable to RFC. *See CompuServe*, 89 F.3d 1257 at 1262. RFC must make a prima facie showing that this Court has jurisdiction over Opes and KAL in order to defeat the motions. *See id*.

Both state and federal law are relevant to the question of whether a plaintiff has carried its burden in establishing personal jurisdiction over a defendant. *Int'l Tech Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997). Specifically, a federal court sitting in diversity may not exercise jurisdiction over a defendant unless (i) courts of the forum state would be authorized to do so under state law and (ii) jurisdiction is compatible with federal due process requirements. *Id*.

Ohio's long-arm statute does not give Ohio courts jurisdiction to the limits of the due process clause. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). This Court therefore must determine whether Ohio courts would be authorized to exercise personal jurisdiction over Opes and KAL pursuant to Ohio's long-arm statute and Ohio case law. Because, as explained below, Ohio's long-arm statute does not authorize jurisdiction over Opes or KAL, the Court need not address the federal due process prong of the analysis. *See id*.

Ohio's long-arm statute provides several grounds on which courts may exercise jurisdiction; however, most are irrelevant to this dispute.[3] Plaintiff concedes that the only relevant provision of the statute is § 2307.382(A)(6), which provides:

(A)  A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

>   . . .

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state.

---

[3] It is undisputed that neither Opes nor KAL transacted any business in Ohio (Ohio Rev. Code § 2307.382(A)(1)), contracted to supply services or goods in the State (*id*. § 2307.382 (A)(2)), caused tortious injury by an act or omission in the State (*id*. § 2307.382(A)(3)), regularly does or solicits business/engages in any other persistent course of conduct/derives substantial revenue from goods used or consumed or services rendered in the State (*id*. § 2307.382(A)(4)), caused injury by breaching a warranty (*id*. § 2307.382(A)(5)), caused tortious injury by a criminal act, where an element of the crime took place in the State (*id*. § 2307.382(A)(7)), has an interest in or possesses real property in the State (*id*. § 2307.382(A)(8)), or contracted to insure any person, property, or risk located in the State (*id*. § 2307.382(A)(9)).

Ohio Rev. Code § 2307.382.  As such, the question for the Court is whether RFC's allegations establish with reasonable particularity those specific facts that support jurisdiction under § 2307.382 (A)(6).

Setting aside the issue of whether conspiring to injure an Ohio company would be sufficient to confer jurisdiction under § 2307.382(A)(6)—when all of the alleged acts in furtherance of the conspiracy took place in California—the Court concludes that RFC failed to allege with particularity that Opes and KAL committed tortious injury.  The tort at issue is that of civil conspiracy under Ohio state law, the elements of which are: "(1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy." *In re Nat'l Century Fin. Enters., Inc.*, 504 F. Supp. 2d 287, 326 (S.D. Ohio 2007) (quoting *Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 90 Ohio App. 3d 284, 292, 629 N.E.2d 28 (Ohio Ct. App. 1993)).  Necessarily taking RFC's allegations as true and drawing all inferences in its favor, the most the Court can assume is that Opes and KAL received business opportunities that should have gone to RFC.  There is no allegation that either Opes or KAL knew those opportunities should have gone to RFC, or knew that RFC was even relevant to or involved with those opportunities.  Absent those allegations, RFC failed to allege with reasonable particularity that Opes or KAL engaged in a civil conspiracy so as to commit tortious injury.

RFC similarly failed to allege any connection between Opes and/or KAL and the State of Ohio.  It is undisputed that this case involves California customers allegedly being diverted from RFC's California office to other California businesses.  There is no indication that Opes and/or KAL knew that RFC is an Ohio company or that any of the new business opportunities received had anything to do with the State of Ohio.  As such, RFC failed to allege any facts that could

support the inference that Opes and KAL "might reasonably have expected that some person would be injured thereby in this state." Ohio Rev. Code § 2307.382(A)(6); *cf. Herbruck v. LaJolla Capital*, 9th Dist. No. 19586, 2000 WL 1420282, at *3 (Ohio Ct. App. Sept. 27, 2000) (holding that § 2307.382(A)(6) was met when a defendant allegedly committed fraud and conspiracy to commit fraud by improperly transferring stock, "while knowing full well that the stock involved was of an Ohio corporation").

      RFC's conspiracy allegations are defective for other reasons as well.  Notably, RFC alleges that Opes, KAL, and the other Defendants engaged in a conspiracy to "defraud," but the accompanying fraud claims do not reference or have anything to do with anyone but the Individual Defendants.  Specifically, RFC's fraud claims assert that the Individual Defendants misrepresented and suppressed facts about themselves, their qualifications, and details of their employment to RFC, so as to fraudulently induce RFC into hiring them and paying them reimbursement to which they were not entitled.  There is no allegation that Opes or KAL had any knowledge of or involvement with those allegedly unlawful acts.  Nor is there any allegation that Opes or KAL was aware of the Individual Defendants' agreements with RFC or, specifically, of the fact that the Individual Defendants had agreed to work exclusively for RFC.  Put simply, the complaint fails to explain with any particularity how Opes or KAL is responsible for the alleged tortious injury that RFC felt in Ohio.  Jurisdiction under § 2307.382(A)(6) therefore cannot lie.

RFC's responses to Opes' and KAL's motions to dismiss do not save its defective allegations.  After citing only one case in which a court interpreted Ohio's long-arm statute,[4] RFC makes what can be construed as two identifiable arguments in favor of its position:  (1) that "an out-of-state defendant involved in a conspiracy who lacks sufficient minimum contacts with the forum state may nevertheless by subject to jurisdiction because of a co-conspirator's contacts with the forum," (ECF No. 24, at 4 (citing *Am. Copper & Brass, Inc. v. Meuller Europe, Ltd.*, 452 F. Supp. 2d 821, 829 (W.D. Tenn. 2006))), and (2) that a conspiracy to harm an Ohio corporation necessarily establishes jurisdiction over an out-of-state conspirator (ECF No. 33, at 4 (citing *Omega Cable & Commc'ns, Inc. v. Time Warner, Inc.*, No. 2006 WL 2077035, at *2–3 (N.D. Ohio July 24, 2006))).  But neither of these arguments addresses the pleading defects discussed above.  Without sufficiently alleging that Opes or KAL participated in a conspiracy, RFC cannot show that the Individual Defendants' contacts with RFC should be imputed to Opes or KAL, or that the *Omega Cable* court's analysis is relevant to this case.  As such, even if the law discussed in *American Copper & Brass* and *Omega Cable* accurately represents the law of Ohio, it does not save RFC's jurisdictional case against Opes or KAL.

Having found that Ohio's long-arm statute does not confer jurisdiction over Opes or KAL, the Court need not address the parties' due process arguments.  The Court also need not address Opes' alternative argument that the claims against it should be dismissed because venue is improper in this Court.

---

[4] RFC cites several cases in which courts discussed the federal due process requirement that a defendant have sufficient minimum contacts with the forum state; however, the Court must analyze the long-arm statute independently of the due process analysis.  RFC's arguments about the Supreme Court's due process analysis in *Calder v. Jones*, 465 U.S. 783, 789 (1984), for example, or the Sixth Circuit's analysis of Tennessee's long-arm statute in *Neal v. Janssen*, 270 F.3d 328, 331 (6th Cir. 2001), are not particularly instructive in determining whether jurisdiction is proper under Ohio's long-arm statute.

8

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Opes' motion to dismiss (ECF No. 15) and KAL's motion to dismiss (ECF No. 30). Both Opes Advisors, Inc. and KAL Financial, Inc. are hereby **DISMISSED** from this civil action.

**IT IS SO ORDERED.**

>  **/s/ Gregory L. Frost**
>  **GREGORY L. FROST**
>  **UNITED STATES DISTRICT JUDGE**